UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT VICKERY,                                Case No. 07-13419

           Plaintiff,                          George Caram Steeh
vs.                                            United States District Judge

RUSSELL ERIC ALLWOOD, *et al.*,                Michael Hluchaniuk
                                               United States Magistrate Judge

           Defendants.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTIONS TO DISMISS (Dkt. 114, 116)

I.     **PROCEDURAL HISTORY**

       Plaintiff, Robert Vickery, a prisoner in the custody of the State of Michigan,

filed this lawsuit on August 16, 2007.  (Dkt. 1).  In that complaint, plaintiff seeks

damages against Correctional Medical Services (CMS), two CMS physicians (Dr.

Ann Burton and Dr. Jan Goldberger), and two employees (CTO Allwood and

Director Patricia Caruso) of the Michigan Department of Corrections (MDOC),

based on allegations that he was denied certain rights under the Constitution.

       Defendants CMS and Dr. Burton filed a motion to dismiss on November 6,

2007, claiming that plaintiff failed to exhaust his administrative remedies against

both CMS and Dr. Burton.  (Dkt. 16).  The undersigned issued a Report and

Recommendation on April 25, 2008, recommending that the District Court deny

defendant Burton's motion to dismiss and allow plaintiff the opportunity to seek leave to amend his complaint to add Dr. Hutchinson (the director of CMS) and to amend his claim against CMS. (Dkt. 37). Defendants objected to the Report and Recommendation and the District Court adopted it in part, dismissing Dr. Burton with prejudice, and permitting plaintiff the opportunity to amend his complaint. (Dkt. 44).

Plaintiff filed a motion for leave to amend his complaint after the Report and Recommendation was filed, but before Judge Steeh's Order issued. (Dkt. 39). On October 2, 2008, the undersigned granted plaintiff's motion to amend the complaint, in part. (Dkt. 62). Plaintiff was permitted to amend his complaint only as to defendants CMS and Dr. Craig Hutchinson, but was not permitted to add two new defendants. *Id.* On March 5, 2009, counsel for plaintiff appeared in this case. (Dkt. 84). The undersigned held a scheduling conference September 29, 2009. (Dkt. 99). Pursuant to the case management order issued after that conference, plaintiff was permitted to amend his complaint once again. (Dkt. 102). Plaintiff filed a second amended complaint on October 16, 2009 and this is the controlling complaint in this case. (Dkt. 103). The only defendants named in the second amended complaint are defendants Allwood, the MDOC, and CMS. *Id.*

On January 4, 2010, defendant CMS filed a motion to dismiss the second amended complaint based on a failure to exhaust administrative remedies and

failure to state a claim on which relief can be granted.  (Dkt. 114).  On January 11, 2010, the MDOC also filed a motion to dismiss based primarily on Eleventh Amendment immunity.  (Dkt. 116).  On February 4, 2010, plaintiff filed responses to both motions to dismiss.  (Dkt. 122, 123).  CMS filed a reply on February 17, 2010.  (Dkt. 125).  A hearing on these motions was held on March 18, 2010 and the motions were taken under advisement.  With permission of the Court, and based on plaintiff's claim at the hearing that certain grievance materials were not authentic, CMS filed a supplemental brief in support of its motion to dismiss on March 30, 2010.  (Dkt. 131).

This matter is now ready for report and recommendation.  For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **GRANT** defendants' motions to dismiss.

## II.    STATEMENT OF FACTS

A.    <u>Plaintiff's Second Amended Complaint</u>

Plaintiff alleges that he was involved in a motor vehicle accident on December 1, 2006 while in the custody of defendant Allwood, a transportation officer for the MDOC.  (Dkt. 103).  Plaintiff claims that, because defendant Allwood failed to use caution while driving in hazardous conditions, exceeded the speed limit, and talked on his cellular telephone, the motor vehicle was involved in an accident.  *Id*.  According to plaintiff, he suffered neck and back injuries that

continue to cause him pain and occasional numbness in his arms and legs. *Id.*

Plaintiff alleges that, despite telling defendant Allwood that he was injured,

defendant Allwood failed to seek medical attention for him at the scene, requesting

instead that plaintiff receive medical attention at the Mid-Michigan Correctional

Facility (MMCF). *Id.* Plaintiff alleges that when a new transportation vehicle

came to the accident scene, plaintiff could not walk on his own and had to crawl

into the vehicle.

When plaintiff was returned to the MMCF, he was admitted into the

facility's health center and was later taken by ambulance to the hospital. Plaintiff

claims that the physicians at the hospital ordered an x-ray, but he was not allowed

to remove his waist restraints, which blocked the view of his lower back injuries.

Plaintiff says the hospital prescribed him Motrin for pain, but neither CMS nor the

MDOC provided him with pain medication for four days.

Plaintiff says he was denied several requests to see CMS medical personnel,

after returning from the hospital. After sending a "kite" (a written informal

complaint or request submitted by a prisoner) on December 6, 2006 due to his pain,

plaintiff claims that he was denied treatment for six days. On December 20, 2006,

plaintiff submitted another kite, complaining of pain and "pinching" in his back.

Finally, on January 8, 2007, plaintiff was seen by Dr. Burton, who denied him x-

rays and MRIs, which plaintiff claims were necessary to properly diagnose his

injuries, pursuant to CMS's policy to save on medical costs.

In March 2007, Dr. Burton was replaced by another CMS physician, Dr. Jan Goldberger. Between March 14, 2007 and May 25, 2007, plaintiff's requests for treatment were denied, including a kite response on May 11, 2007 indicating that the facility no longer had a doctor who could provide him with treatment.

Plaintiff alleges that Dr. Burtch twice requested an MRI for plaintiff, but CMS denied the request to save on medical costs. On August 27, 2007, more than eight months after the accident, plaintiff finally received an MRI of his brain, which showed an abnormal signal in the pituitary fossa. In September 2007, Dr. Roger Gerlach diagnosed plaintiff with post-concussion syndrome resulting from the automobile accident.

According to plaintiff, the diagnosis came only after nine months of willful neglect and the denial of basic medical care by CMS. Plaintiff asserts that CMS violated his Eighth Amendment and due process rights by denying him medical treatment based on its cost-saving policy. Plaintiff also alleges that the cost-saving policy is the result of conspiracy between CMS and the MDOC.

B.    MDOC Grievance Procedures

There were three separate grievance policies in place during the period in which plaintiff filed his grievances, although they contain the same primary requirements. (Dkt. 131, Ex. A, Att. 1-3). Pursuant to the grievance policy, there

are four stages that an inmate must satisfy prior to seeking judicial review, each within specific time limits. First, within two days of discovering a grievable issue, the inmate must attempt to verbally resolve the issue with those involved. (Dkt. 131, Ex. A, Att. 1, ¶ R; Ex. A, Att. 2, ¶ P; Ex. A, Att. 3, ¶ P). If this attempted resolution is unsuccessful, the inmate may then file a Step I grievance form within five business days of the attempted resolution. (Dkt. 131, Ex. A, Att. 1, ¶ X; Ex. A, Att. 2, ¶ V; Ex. A, Att. 3, ¶ V). If the inmate is not satisfied with the response at Step I, he may request a Step II appeal form within five days of the response, and has an additional five days within which to file it. (Dkt. 131, Ex. A, Att. 1, ¶ DD; Ex. A, Att. 2, ¶ BB; Ex. A, Att. 3, ¶ BB). If the inmate is dissatisfied with the result at Step II, he has ten business days to appeal to Step III. (Dkt. 131, Ex. A, Att. 1, ¶ HH; Ex. A, Att. 2, ¶ FF; Ex. A, Att. 3, ¶ FF). The Step III response concludes the administrative grievance process set forth in MDOC Policy Directive 03.02.130. In filing a grievance and/or grievance appeals, an inmate must state the facts involved with the issue being grieved and must also include the dates, times, places, and names of all those involved in the issue being grieved. (Dkt. 131, Ex. A, Att. 1, ¶ T; Ex. A, Att. 2, ¶ R; Ex. A, Att. 3, ¶ R).

The grievance procedure contains several bases on which a grievance must or may be rejected. A grievance will be rejected if it raises issues with the misconduct hearing process. (Dkt. 131, Ex. A, Att. 1, ¶ F; Ex. A, Att. 2, ¶ F; Ex.

A, Att. 3, ¶ F).  A grievance will also be rejected if it contains profanity, threats of physical harm, or language which demeans the character, race, ethnicity, physical appearance, gender, religion or national origin of any person.  (Dkt. 131, Ex. A, Att. 1, ¶ G; Ex. A, Att. 2, ¶ G; Ex. A, Att. 3, ¶ G).  A grievance may be rejected if it is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant.  (Dkt. 131, Ex. A, Att. 1, ¶ G.1; Ex. A, Att. 2, ¶ G.1; Ex. A, Att. 3, ¶ G.1).  A grievance may also be rejected if the grievance is filed in an untimely manner.  (Dkt. 131, Ex. A, Att. 1, ¶ G.4; Ex. A, Att. 2, ¶ G.4; Ex. A, Att. 3, ¶ G.3).

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

Defendants have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Rule 12(d) provides that, if the moving party presents and the Court relies on matters *outside* the pleadings, "the motion [under Rule 12(b)(6)] must be treated as one for summary judgment and disposed of as provided in Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed.R.Civ.P. 12(d).  Thus, the plain language of the rule requires that if the motion relies on outside materials that the Court considers, then the motion "must" be converted into a motion for summary judgment pursuant to Rule 56.  *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842

(6th Cir. 1993).  With respect to defendant's argument that plaintiff failed to exhaust his administrative remedies, the parties submitted, and the undersigned has considered, evidence that is outside the pleadings.  Thus, the Court will treat the motion to dismiss as one for summary judgment under Rule 56.

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party.  *Tanner v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule:  "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits."  *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted).  Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is

competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

B.    Exhaustion of Administrative Remedies

  1.    Legal standards

In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 923.  The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process.  *Id*.  Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense.  *Id*.  Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise.  *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden-the plaintiff on a claim for relief of the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*,

799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

> 2. Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 2387, quoting, *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at

2387-88. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in Jones was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance procedures. As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem. *Jones*, 127 S.Ct. at 923; *see also Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.").

### 3. Plaintiff's Grievances

The pertinent question is whether plaintiff's grievance would have given reasonable notice that CMS and the MDOC were being grieved for denying necessary medical care based on a cost-cutting policy. CMS has offered evidence that plaintiff filed nine grievances through Step III during the relevant time period.

(Dkt. 131). None of these grievances mentions CMS or any "cost-cutting" policy instituted by the MDOC and/or CMS:

- Grievance STF 0612086317Z, submitted on December 4, 2006, three days after the accident, involves plaintiff's complaint about the accident itself, defendant's Allwood alleged fault for causing the accident, and his alleged failure to seek appropriate medical attention for plaintiff. (Dkt. 131, Ex. 5).

- In grievance STF 0612086217Z, dated December 5, 2006, plaintiff complained about defendant Allwood's failure to summon an ambulance at the scene of the accident. (Dkt. 131, Ex. 6). In his Step III appeal of this grievance, plaintiff requests that "M.D.O.C. Healthcare" perform an MRI to determine the cause of his back pain and numbness in his legs.

- Grievance STF 0701003112F, dated January 8, 2007, involves plaintiff's complaints about his pain medications being stopped and Dr. Ann Burton's failure to address his symptoms. He requests to see a neurologist outside of the "M.D.O.C.," to be put back on his medications, and that an MRI on his back and neck be performed. In response, at Step I, the investigation revealed that plaintiff refused pain medications and they were subsequently ordered again by the

physician. It was also determined that an MRI was deemed not medically necessary. At Step II, the grievance was rejected because plaintiff had failed to make any effort to resolve the issue before filing the grievance. At Step III, it was concluded that he was being monitored, evaluated, and appropriate diagnostic measures were ordered. It was also noted that they were awaiting final approval for the MRI. (Dkt. 31, Ex. 7).

- In Grievance STF070208102C1, dated February 7, 2007, plaintiff complained about not being compensated for loss of work in the month of December, 2006. (Dkt. 131, Ex. 8).

- In Grievance STF 0707037628G, dated June 20, 2007, plaintiff complained about a failure to timely respond to Step III grievances. Plaintiff sought an investigation of the December 1, 2006 accident and $150,000 in compensation. (Dkt. 131, Ex. 9).

- In Grievance JCS 07090089012z, plaintiff complains about having to pay a co-pay for a chronic care issue arising from the automobile accident. (Dkt. 131, Ex. 10).

- In Grievances JCS 0806007A and JCS 08018407z, plaintiff complains about his allegedly improper removal from the RSAT (Residential Substance Abuse Treatment) program. (Dkt. 131, Ex. 11, 12).

- In Grievance ITF 08-0324927d, plaintiff complains about parole board issues. (Dkt. 131, Ex. 13).

In the view of the undersigned, none of these grievances would have put CMS and the MDOC on notice that plaintiff was grieving the denial of medical care based on an alleged "cost-cutting" policy, pattern, or practice by the MDOC and/or CMS.

Plaintiff argues, however, that he submitted another grievance through Step III. On July 9, 2007, plaintiff submitted Grievance STF 0707038928A. (Dkt. 123-7). Plaintiff claims that CMS and the Bureau of Health Care Services (BHCS) violated his Eighth Amendment rights by failing to perform the proper medical tests and examinations. Specifically, he states that a licensed medical doctor requested an MRI and it has been denied by CMS and BHCS. Plaintiff requested proper testing and to start receiving pain medication and muscle relaxers. Plaintiff's grievance was rejected at Step I because it violated Policy Directive 03.02.130 in that is raised duplicative issues previously raised in STF 0705025112Z and STF 0705027112Z3. Notably, neither of these grievances were apparently taken through Step III, nor does plaintiff claim that they were. According to plaintiff's Step II appeal, Grievance STF 0707038928A was not duplicative because the two referenced grievances related to health care's failure to do perform adequate testing, while STF 0707038928A was an "appeal" of CMS's decision to deny the request for an MRI. The rejection was upheld at Step II.

Plaintiff submits what purports to be a Step III appeal, (Dkt. 123-7, pp. 5-6), but, according to the affidavit and documents offered by CMS from the MDOC, there is no record of plaintiff submitting the grievance through Step III. (Dkt. 114, Ex. E; Dkt. 131, Ex. A).

Ordinarily, the undersigned might have concluded that plaintiff created a material question of fact regarding whether he exhausted his administrative remedies as to Grievance STF 0707038928A. However, plaintiff has not offered any admissible evidence to suggest that the rejection of this grievance was improper or that he actually submitted the grievance to Step III of the process, and, therefore, has failed to create a genuine issue of material fact. Under *Woodford*, plaintiff cannot have exhausted any claim pursuant to a rejected grievance because he did not comply with the grievance policy. *See e.g.*, *Surles v. Andison*, 2009 WL 1607621, *7 (E.D. Mich. 2009). Thus, the undersigned suggests that defendants have satisfied their burden of proving that plaintiff failed to exhaust his administrative remedies with respect to all grievances submitted through Step III of the grievance process by plaintiff during the relevant time period and with respect to Grievance STF 0707038928A. Plaintiff's policy, pattern, and practice claims against CMS and the MDOC are not exhausted and should be dismissed.

The undersigned suggests that plaintiff's federal claims, because they are based on a *rejected* grievance, should be dismissed *with* prejudice. Ordinarily, a

dismissal based on failure to exhaust administrative remedies is made without prejudice. *See e.g.*, *Hicks v. Harrington*, 2008 WL 4791916 (E.D. Mich. 2008). However, "a claim that has been properly rejected by the prison grievance system on procedural grounds should be dismissed from the plaintiff's complaint with prejudice." *Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006), overruled on other ground, *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). This is so because "[o]nce a prison formally denies an inmate's grievance for untimeliness, and either the inmate does not challenge the basis for that decision or the court upholds the decision, the inmate's failure to exhaust is no longer 'a temporary, curable, procedural flaw.'" *Id.*

This issue has not been squarely addressed by the Sixth Circuit and the undersigned suggests that the reasoning of the Tenth Circuit is persuasive. Where a grievance is rejected on procedural grounds and the merits of the grievance were never ruled on by the MDOC because of plaintiff's failure to comply with the applicable procedures, the benefits of exhaustion are not met: "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Hicks*, at *6, quoting, *Jones*, 127 S.Ct at 923; *see also Harris v. Ndife*, 2006 WL 3469552) ("The Supreme Court has recently held [in *Woodford v. Ngo*]

that in order to satisfy the requirement that administrative remedies be exhausted prior to filing suit, those remedies must be exhausted properly and within the time frames required by the remedy process. That failure requires dismissal of his complaint, with prejudice.") (internal citations omitted); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) ("[I]n the absence of any justification for not pursuing available remedies, [petitioner's] failure to pursue administrative remedies while they were available precluded his federal lawsuits, and they were properly dismissed with prejudice.").

In this case, plaintiff's grievance was rejected because it raised duplicative issues. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. Plaintiff has not offered any admissible evidence in response to the dispositive motions to undermine the conclusion that the rejection was proper, including the grievances of which Grievance STF 0707038928A was deemed duplicative. Whether the procedural flaw is timeliness or some other critical procedural rule set forth in the grievance procedure as set forth in *Woodford*, where the prisoner failed to cure the defect and has not offered any evidence to suggest that he was prevented from doing so, the undersigned suggests that the dismissal of plaintiff's claims should be with

Report and Recommendation
Motions to Dismiss
*Vickery v. Allwood*; 07-13419

prejudice.

C.     State Law Claims

Plaintiff has also raised a host of state law claims against the MDOC and

defendant Allwood.[1]  The undersigned suggests that this Court decline to exercise

supplemental jurisdiction over such state law claims given that all federal claims

against all defendants will be dismissed.  *See United Mine Workers v. Gibbs*, 383

U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, ... the state

claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris*, 503

F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a

plaintiff's federal law claim, it should not reach state law claims.").

Given the foregoing conclusions, the undersigned suggests that the other

arguments raised by defendants need not be addressed.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the Court

**GRANT** defendants' motions to dismiss, **DISMISS** the federal claims **WITH**

**PREJUDICE** and the state law claims **WITHOUT PREJUDICE**.

The parties to this action may object to and seek review of this Report and

---

[1] No federal claims have been asserted against defendant Allwood in the
second amended complaint, contrary to the conclusion reached in an earlier order
of the undersigned, granting in part and denying in part, defendants' motion to stay
discovery.  (Dkt. 132).

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 29, 2010                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on April 29, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Brad A. Danek, David B. Timmis, Jeffrey E. Slavik, Adam Purnell, James T. Farrell, Randall A. Juip, Anthony D. Pignotti, and Brian J. Richtarcik.

                                        s/Tammy Hallwood
                                        Case Manager
                                        U.S. District Court
                                        600 Church Street
                                        Flint, MI 48502
                                        (810) 341-7887
                                        tammy_hallwood@mied.uscourts.gov